## THE STATE OF IOWA v. TURNER.

1. **Criminal law:** ERRONEOUS ASSUMPTION WITHOUT PREJUDICE. A prisoner will not be concluded by an erroneous assumption by his own counsel, which resulted to his prejudice, but a judgment will not be reversed when it is apparent on the record that such assumption did not operate to his injury.

2. —— CONFESSION. Under § 4806 of the Revision of 1860, a confession made out of court will not warrant a conviction unless there is other proof that the offense charged has in fact been committed.

3. **Instructions:** REASONS FOR RULES. The court in giving instructions to a jury, should state rules of law, and is not required to state the reasons upon which they are founded.

4. **Criminal law:** GOOD CHARACTER. General good character may be shown to rebut the presumption of guilt arising from circumstantial testimony, but it does not constitute a defense.

5. **Verdict:** CRIMINAL LAW. On the trial of an indictment charging the defendant with "concealing," and with "receiving" and "aiding in the concealment" of stolen property, the jury returned the following verdict: "We, the jury, find the defendant guilty of aiding in concealing the stolen property mentioned in the indictment, as charged therein, and assess the value of the same at one thousand dollars:" *Held*, that it was equivalent to a general verdict of guilty.

6. **Criminal law:** CONCEALMENT OF STOLEN PROPERTY: CASE FOLLOWED. The case of *The State of Iowa* v. *St. Clair*, 17 Iowa, 149, cited and approved.

*Appeal from Des Moines District Court.*

MONDAY, JUNE 26.

THE prisoner was indicted, tried and convicted of the crime of aiding to conceal certain gold and silver watches, &c., stolen from one Prochoski, knowing the same, &c. The case grows out of the same transaction detailed in *The State* v. *St. Clair*, 17 Iowa, 149. For the questions made see the opinion.

*J. C. & B. J. Hall and C. C. Nourse* for the appellant.

*I. L. Allen*, Attorney-General, for the State.

WRIGHT, Ch. J. — I. The language of the statute is, that if any person *aid* in *concealing* any *stolen* goods, &c., *knowing* the same to be so obtained, he shall be punished, &c. (Rev., § 4246.) The act of April 7, 1862, ch. 121, p. 135, only makes the punishment depend upon the value of the property stolen, and hence the jury in this case found this value.

That the indictment is defective for not charging the *felonious intent*, though suggested in appellant's brief, is not pressed in argument, as a closer examination shows that this intent is sufficiently charged.

Much of appellant's argument has, however, been devoted to a kindred proposition, based upon certain instructions given and refused by the court below. It is urged that, to constitute this crime, it is not sufficient to *aid* in concealing, with the *knowledge* that the property was stolen, but that there must also be a *felonious intent;* that it is this *intent* which constitutes the essence of the crime, and that this element of the offense was entirely lost sight of and ignored in all the instructions, and throughout the trial. The disposition of this question will first receive our attention.

1. CRIMINAL LAW: erroneous assumptions.

VOL. XIX.—19

Upon what ground this position is now urged, in view of the record, we cannot well imagine. We find that at the instance of the defendant, the court gave this instruction: "The offense charged against the defendant is composed of three elements or ingredients: 1st. The fact that the property has been stolen; 2d. That the defendant *knew* it to have been stolen; 3d. That he aided in concealing the same; and a failure on the part of the State to prove either of these ingredients beyond a reasonable doubt leaves the whole charge entirely unsustained, and the defendant must be acquitted." And, again: "To be guilty of the offense charged it must be shown, beyond a reasonable doubt, that the defendant, with the *intention to aid* the thieves or persons possessing the stolen property, or to cover up the larceny, or to hide the property, did such acts, as actually aided in the concealing thereof." The first instruction asked and given for the State, is in substance the same as that above quoted; and after the closest examination, we are unable to see that defendant at any time insisted that the *felonious intent* should be shown in any other way, or beyond what is implied or contained in the foregoing instructions. Indeed, we think we are not mistaken in assuming that his counsel acted upon the theory, that if he *aided* in *concealing stolen* property, *knowing* it to be *stolen*, the felonious intent was necessarily implied thereby, or concluded therein. And while we would not, by any means, conclude a prisoner's rights by an assumption which resulted to his prejudice, or in a conviction which the law would not sustain, the rule is otherwise where it clearly appears that no injury resulted therefrom. In other words, if it be admitted that defendant had the right to ask that, in order to convict there must have been a *felonious intent* as well as *guilty knowledge*, we could not in this case reverse, because, under the circumstances, the guilty knowledge could not

exist, without the criminal intent. If the defendant *aided* in *concealing* this property, *knowing* it to be stolen, there then remains no doubt that his acts were *intended* to aid in the concealing thereof. If a case could arise, where a party could *aid* in the *concealment* of property, *knowing* that it was stolen, and be innocent of the felonious intent, this is not one of them, and we need not, therefore, enter the wide field occupied by counsel in the discussion, nor examine the several authorities cited by them which it is claimed recognize the necessity of showing the criminal *intent*, and that mere *knowledge* of the previous larceny with the act of concealing or aiding is not sufficient. The case does not call for it. If it did, it would not be difficult to show that under the proof, and all the instructions given, there was little, if any, grounds for complaint.

II. By section 4806 of the Revision, it is declared that "The confession of a defendant, unless made in open 2.——confes- court, will not warrant a conviction, unless accom-
<br>sion. panied with other proof that the offense was committed." The court below was asked to instruct in the very language of the statute, and instead thereof gave the following: "A confession of a defendant that he is guilty of a crime, unless made in open court, will not warrant a conviction, unless accompanied with other proof tending to connect the defendant with the commission of the offense." In view of the object of the statute, and the proof in this case, there was no error in the modification. The plain meaning of the statute is, that a confession made out of court will not warrant a conviction, unless there is other proof that the offense charged has in fact been committed. Thus, in case of murder, it must be shown by proof *aliunde*, that the alleged subject of the homicide is dead, and so of all other offenses. That a crime has been committed; that there is criminal wrong to punish, must be established in some other way than by

the confession, unless such confession is obtained in the presence, and under the care and watchful eye of the court. In this case, however, there was no confession. The State did not rely upon any thing of the kind. There were admissions or conversations of defendant detailed, but nothing approximating a confession. Not only so, but there was abundant proof that the property was in fact stolen; that it was concealed, and whether defendant aided therein, depends not so much upon anything he said, as upon facts established, if at all, by independent testimony. Under the circumstances, the action of the court was not erroneous.

III. The court was also asked to instruct upon the effect of verbal confessions or admissions, the two instructions *3. INSTRUC-* copying almost literally the language of Mr. *TIONS: rea-* *son for rule.* Greenleaf (1 Ev., §§ 280, 214). These instructions contain the reasons and argument of the learned author, *in favor* of receiving such evidence with great caution. They contain nothing improper, so far as they state the general rule and the reasons therefor. But no court is bound to give such an instruction. We have observed that it is not uncommon for one party to seek to get, in the shape of instruction, all of the argument tending to impair the force of admissions before the jury; while the other, claiming that they are *deliberately* and *carefully* made, insists upon what he esteems as his part of the same argument, and thus matter is thrown into the jury box, which can only tend to mislead, confuse and perplex. It is no part of the duty of a court to give to the jury all the law and the reasons therefor found in the books. The correctness of a legal proposition must be judged by its applicability to the particular case. That *witnesses* may be *mistaken* in detailing circumstances, that a party may fail to express his own meaning, that human memory is infirm, that witnesses may omit or substitute words, all these and other

The State of Iowa v. Turner.

reasons may be very proper for *counsel* to present for the consideration of jurors. The court, however, may properly stop with stating the rules, and need not give the reasons for it. To do so would frequently be improper and out of place. The weight due to such testimony depends so peculiarly upon the facts of each case, that no court ought to be required to do more than state the rule. While it might be explained and illustrated, to refuse to do so is not error.

IV. The same remarks are applicable to the seventh instruction, asked by defendant and refused. We think the court might properly enough have given it, but after all it partakes more of the·nature of an argument than an instruction. This practice of fighting battles over again in the instructions, of having repeated therein the illustrations, the theories and grounds therefor of the respective parties, needs no encouragement. On the contrary, as it only tends to confuse the jury, protract the trial, and render more uncertain the fair and just disposition of the cause, it should be checked, and courts should labor more and more to present the issues in a clear, single, plain, unincumbered manner.

V. The 8th instruction for the State recognizes the rule that general good character may be shown to rebut the 4. CRIMI-NAL LAW: presumption of guilt arising from circumstantial good character. testimony. The jury were further instructed, however, that "against facts positively or strongly proven, good character cannot avail," and in this same connection they were told, that if it was positively established, that defendant aided in the concealment of the stolen goods mentioned, &c., "his previous good character was not a· defense, though it might be considered in making up their minds as to his guilt or innocence." Taking these instructions together, we do not think they militate, what is said to be the true rule, to wit, "that in all cases a good char-

acter is to be considered. (*State* v. *Henry*, 5 Jones, N. C., 65.) They are certainly in accord with the law, as laid down in Webster's case, 5 Cush., 295.

VI. The statute punishes for aiding to conceal property obtained by burglary or larceny. If the prisoner is charged with thus aiding as to stolen property, proof that it was obtained by burglary is no defense. That the act of stealing was accomplished in the manner of a burglary made it no less larceny; and if the party aiding knew of the larceny, but not of the burglary, he would be no less guilty.

VII. Other instructions are referred to by counsel, but not with much apparent reliance, and it does not seem to 5. VERDICT: criminal law. be necessary that we should give them specific attention. The foregoing views dispose of the more important ones, and we then come to the two questions most relied upon for a reversal, and which have received the greater share of attention in the discussion.

The verdict was in the following form: "We, the jury, find the defendant guilty of aiding in concealing the stolen property mentioned in the indictment, *as charged* therein, and assess the value of the same at one thousand dollars." This, it is claimed, is a *special* verdict, and is therefore one of acquittal, as it fails to find either the *scienter* or intent.

The jury may render a *general* verdict, or if in doubt as to the legal effect of the facts proven, may find a *special* verdict. Upon a plea of "not guilty," a general verdict is "guilty," or "not guilty," which implies a conviction or acquittal of every material allegation in the indictment. A *special* verdict is that by which the jury finds the facts only, leaving the judgment to the court. It must present the conclusions of facts, as established by the evidence, and not the evidence to prove them, and these conclusions of fact must be so presented as that nothing remains to the court but to draw conclusions of law upon them.

The State of Iowa v. Turner.

(Rev., §§ 4828, 4829, 4830.) It seems to us that this finding has scarcely a single element of a special verdict. It must be remembered that the offense charged is designated in the statute as "receiving stolen goods," "concealing stolen goods," "aiding in concealing," and while in the caption of this indictment the offense is named as "aiding in the concealment of stolen property," in the indictment itself he is charged with "concealing," and with "receiving," and "aiding in the concealment". of the same. Understanding this much, the verdict is perfectly plain and intelligible. True, as a general verdict, there was no necessity of doing more than to say "guilty," or "not guilty," and it is a forced and unwarranted construction of language to say that this verdict means anything more or less than this. There is no effort, or pretense of effort, to present conclusions of fact. It is the plain, unambiguous, ultimate result at which the jury arrived after considering the whole case — their general verdict on the whole testimony. There is no doubt, no uncertainty, as to their meaning. There is no necessity of excluding or presuming anything in order to arrive at their clear intention. It is the same as if they had said they found the defendant guilty of the offense charged, except that it distinguishes between " aiding to conceal," and the more affirmative act of " concealing." It is not as though they had undertaken to find specific facts, and had failed to find some one essential to the connection.

Let us briefly refer to a few of the cases cited by counsel, to show the clear distinction between them and the case at bar.

In *Hunter* v. *The Commonwealth*, 2 S. & R., 298, the defendant was found guilty of "keeping a disorderly house," which was not alone an indictable offense. But will it be claimed that "aiding to conceal stolen property," as that offense is named and defined in the statute, is not

indictable? Suppose the Pennsylvania statute had made punishable the "keeping of a disorderly house," defining what was necessary to constitute such a house, would not their verdict have been good? Of this there can be no doubt.

In *Dyer* v. *Commonwealth*, 23 Pick., 402, the verdict found the prisoner guilty of using stolen goods, knowing them to be stolen, but not the goods mentioned in the indictment, or guilty in manner and form, &c., or anything equivalent, and this was held to be bad, because it did not find he had used *the goods described in the indictment*. How unlike the two cases. Here it is expressly found that the prisoner aided "in concealing the stolen property mentioned in the indictment, as charged therein."

In *Commonwealth* v. *Call*, 21 Pick., 509, the verdict was held defective, because it did not find that the offense was committed within the county charged in the indictment. But there were no words referring to the indictment, to the charge as therein contained or stated, but for aught that appeared, the finding might relate to some other time, or some other place. That verdict could only be sanctioned by intendment or implication, for an essential circumstance had been omitted by the jury. In this case there is nothing left to intendment or implication.

In *Wynn et al.* v. *The State*, 1 Blackf., 28, the verdict was, "We, the jury, fine (naming the defendants) ten dollars each." Here there was no finding of "guilty," and upon the plainest principles it was held insufficient to authorize a judgment. If the case at bar was that, we should have no difficulty.

The case in 2 Strange, 1015 (*Rex* v. *Francis*), cited by counsel and referred to in most of the cases, differs essentially from this, in that there the jury undertook to find specific facts, or their conclusions of facts, as established by the evidence, and the question was whether, upon the

The State of Iowa v. Turner.

facts as thus found, the robbery was committed "in the presence of," &c. Here, however, the jury did not undertake to find specific facts or those established by the evidence.

VIII. It is finally insisted with much earnestness and ability, that the testimony did not warrant the verdict. Referring to what is said on this subject in the case of St Clair (17 Iowa, 149), we remark that this verdict under the rule there stated is clearly sustainable. The defendant, though spoken of by the witnesses as having a good character for honesty, was shown to be the keeper of a place where gambling was carried on, and to be a "sporting man." It was in this room that the stolen property was found. He was there at the time. There were some eighteen watches, some of them very valuable. They were all in a bag, and brought by Callendine, the thief, from their place of concealment in this room. They were examined by defendant, and another person, mutually selected by the parties, to appraise and to fix their value. About the time the officers of the law made their appearance, this property was returned to its place of concealment, in the same room, and defendant said to the officers, they had been doing nothing "but having a game," and yet there had been no gaming, or anything else other than a talk about, and the appraisement of this property. That he knew this property was stolen, the jury might well conclude from the amount and value of the same, the place and manner of keeping it, and the purpose and object of the parties in having it thus valued at 10 o'clock at night. In addition to this, one witness swears positively, that the witness said he knew the property was stolen, and yet he said no word to the officers about this property after they entered the room. They were left to find it without assistance from him. Take in connection with these facts the circumstances, that

6. CRIMINAL LAW: concealment of stolen property: case followed.

he was admitted to the room, after the other parties to the crime had got there; that the detective (not known to be such at the time, by the criminals), a stranger to defendant, expressed a doubt as to the propriety of proceeding with the business while he was there; that Callendine, the burglar, said "he was all right," and that Callendine went into the room with defendant's consent, (without, it is perhaps true, any knowledge on defendant's part of his object), and we see no reason for interfering with this verdict. He could not well have witnessed all that there took place, without having a guilty knowledge of the character of the property. It is not necessary that he should have concealed it with his own hands. He was present; knew that it was concealed; kept silent; gave no information; and all this conduct, unexplained, would warrant this verdict. Whether there was any sufficient explanation, was fairly submitted to the jury, and with their verdict we do not feel justified in interfering.

Affirmed.