STATE OF IOWA, Appellee, v. H. E. HENRICKSEN, Appellant.

No. 41022.

JUNE 24, 1932.

John Fletcher, Attorney-general, Neill Garrett, Assistant

Attorney-general, Dio S. McGinnis, County Attorney, and R. B. Hawkins, for appellee.

W. J. Springer and R. A. McGinnis, for appellant.

GRIMM, J.—On the 23d day of January, 1931, the county attorney of Decatur County, Iowa, filed a county attorney's information against the defendant, charging him with having, on or about the night of January 21, 1931, in the county of Decatur, state of Iowa, willfully, unlawfully, feloniously, and maliciously set fire to a certain barn located in the town of Woodland in said county, then and there occupied by Harold Beavers as a barn and then and there the property of one Mattie Henricksen. There was a plea of not guilty. The case was tried to a jury, and the jury returned a verdict of guilty.

The appeal presents a very narrow issue. The error relied upon for reversal is as follows:

"That the court erred in overruling the motion of the defendant for a directed verdict, made at the close of the State's evidence, and renewed at the close of all the testimony, and in overruling defendant's motion for a new trial, to set aside the verdict, and in arrest of judgment, for the following reasons, to wit: 1. That other than by the confession of the defendant, not made in open court, the State failed to show by any competent evidence of any kind or character that the crime of arson, as charged, was committed by this defendant."

The defendant relies upon Section 13903 of the Code, which reads as follows:

"13903. *Confession of defendant.* The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed."

Briefly stated, the record shows that the barn which was burned was in the possession of a tenant named Harold Beavers. At that time, he had in the barn an automobile, a pair of horses, a cow, and some personal property, such as a set of harness and a few minor items. The horses were kept in a double stall, securely tied with halter and halter straps. The cow was in a separate stall, which was closed by two boards, the lower one

nailed and the top .one fastened with a rope. The automobile was in the barn, and above on the second story some hay was stored. It appears without dispute that some of the hay had been thrown down in the middle of the barn to be convenient for feeding purposes.

Beavers had been at this barn in the evening at chore time, and when he left it, the doors were closed and latched. Later, between 10 and 11 o'clock at night, Beavers went back to the barn to examine the stock, his explanation being that the cow was expected to drop a calf. When he left the barn on that occasion, the doors were closed and latched. About 12:30 the same night, one Mildred Beavers, a .relative of the tenant Beavers', heard dogs barking, and heard two cars pass on the road, one of them going west. She occupied a house across the road south and a little west of the location of the barn. She was up more or less during that part of the night, attending to a restless child. Finally, and a few minutes after the last car passed the house, an illumination attracted her attention, which she discerned was caused by the burning barn, and she awoke her husband, Lester Beavers, who went to the scene of the fire. Lester Beavers was the first one to arrive at the scene of the fire. He was joined very soon after by Harold Beavers, the tenant. When Lester Beavers first reached the fire, the barn was burning on the inside. The doors in the barn were open and there was no stock in the barn. Neither the automobile, the harness, nor the personal property in the barn was recovered, and the barn and contents were entirely consumed. Very shortly thereafter, the cow was found, a short distance from the barn, uninjured. The horses were also found, eating some fodder, a short distance from the barn. Each horse was haltered, and attached to the halter was the ordinary halter strap, intact.

The next day, the office of the fire marshall at Des Moines was informed of the fire, and as a result, the assistant deputy state fire marshal, the sheriff, the deputy sheriff, and another party began an investigation, and finally drove to the residence of the defendant, where they found him doing his chores. His family was away from home. It is explained that the wife was called to Sioux City, where she had been for some time, to care for her mother. The defendant invited the men into the house, and after finishing his chores, a general conversation ensued be-

tween the defendant and the staff of officials. Finally, the defendant signed a written statement, known in the record as Exhibit B, which is as follows:

"Decatur County,
"Jan. 22, 1931.

"I, Eros Henricksen, hereby make the following statement of my own free will and accord, without any mental reservation whatever and without any force or duress being used or any promises of leniency from anyone, and furthermore being informed that any statements I make can be used against me in court. I am 29 years old and live in Hamilton Twp., Decatur County. On Jan. 21st I went to Woodland where I own a store and barn. I went with the intention of setting the barn on fire that night but my nerve failed me. Then again Wed. night, Jan. 22, at about 12 o'clock I went back again and set the barn on fire. Before setting the barn on fire I turned a cow and 2 horses out and then I went and set it on fire. I set it in some hay that was in the center of the barn. The reason I set the barn on fire was that I needed money. By setting the barn on fire, I figured that I could raise the money. I had $300.00 insurance on barn.

"H. E. Henricksen.

"Witnesses:
"Fred W. Scharfenberg
"J. Leon Leeper
"R. A. Breeding
"E. F. Kendall."

After signing the said Exhibit B, the defendant was taken to the county jail, where he remained for a few days pending efforts to secure a bail bond. While in jail, Roy Beavers and Ira Beavers called on the defendant and had a conversation with him about the car which was destroyed in the fire. During that conversation, the defendant agreed to turn over his (the defendant's) car to the man who lost the automobile in the fire. This was done apparently on the theory that the defendant would thus be paying for the damages he had done to the owner of the car which was lost in the fire. The conversation was not had by the owner of the car, but by the uncle of the owner of the car, who claims that he visited the defendant and had this conversation with the defendant purely for the purpose of assisting his nephew and recovering something for the loss of the car which

was destroyed by fire. He was accompanied by Ira Beavers, the father of the man who owned the car. At another time, the owner of the burned car called at the jail and had a conversation with the defendant, at which time the defendant agreed that if he was indicted and sent to the penitentiary, he would turn over his car to the owner of the burned car.

The record abundantly shows that for some time prior to the fire, the defendant was in straitened financial circumstances. He owed a bank and the bank was pressing for payment. The defendant had made several unsuccessful attempts to borrow money with which to pay the bank. The defendant had insurance on the barn which was burned. The insurance had at one time amounted to $600 or $700, but it had been reduced to $300 at the time of the fire.

Sometime prior to the fire, the tenant, Harold Beavers, endeavored to buy the property from the defendant, and at one time in the negotiations, the defendant said he would not take less than the insurance he had on the property, to wit, $300.

There are many other circumstances in the record, but the foregoing will suffice.

It will be noted that the confession, Exhibit B, was introduced in evidence without any objection on the part of the defendant.

No question is raised on the instruction of the court that, regardless of the confession, the *corpus delicti* of the crime must be otherwise proved. In State v. Thomsen, 204 Iowa 1160, l.c. 1161, this court, in commenting upon Section 13903 of the Code, said:

"To put this in another way, the *corpus delicti* of the crime must be proved; and, regardless of what the confession may be, if the *corpus delicti* is not proved, the conviction cannot stand. Such has ever been the rule of this court, since the case of State v. Turner, 19 Iowa 144, and has been consistently applied. See State v. Lewis, 45 Iowa 20; State v. Feltes, 51 Iowa 495; State v. Dubois, 54 Iowa 363; State v. Westcott, 130 Iowa 1; State v. Abrams, 131 Iowa 479."

It will be recalled that about 10:30 o'clock of the evening in question, the tenant left the barn with the doors fastened, his horses securely tied, and the cow fastened in a separate stall by two boards, one nailed and the other tied by a rope. Between

12 and 1 o'clock, the dogs in the neighborhood were disturbed, and barked, an automobile was heard to pass, and very shortly thereafter the barn was found to be on fire, burning entirely from the inside. The doors were wide open, the cow was out, and the horses were out.

This court has recently held that circumstantial evidence may be sufficient to establish the *corpus delicti*. In State v. Manly, 211 Iowa 1043, this court said:

"Circumstantial evidence may be sufficient to establish the *corpus delicti*. State v. Solomon, 203 Iowa 954. Hence, under all the record, appellant was not entitled to a directed verdict on the theory that there was no proof of the *corpus delicti*."

The court said further in that case:

"* * * if there is substantial and sufficient evidence supporting the jury's finding that the appellant did commit the larceny, this court will not interfere with the verdict. To put the thought in another way, this court will not substitute its judgment concerning the weight of the evidence for that of the jury. Nevertheless, if it is deemed by the court that the verdict is not supported by the entire record, then the jury's finding may be set aside."

Applying these rules to the case at bar, we think there is sufficient evidence in the record to warrant the jury's finding of guilt. We deem it unnecessary to comment at length upon the evidence. Manifestly, the live stock did not break out of the barn. They were taken out by someone. The first person at the scene of the fire, as shown by the record, found it all ablaze from the inside, and the doors were open and none of the stock was in the barn. The jury could well find on the entire record, as they must have done, that the stock was removed by the party who set fire to the barn. Putting it another way, the jury could well find on the record, by reason of all facts and circumstances shown therein, that the barn was set on fire. The stock was in the barn at 10:30 o'clock, and two hours later, the barn was found to be completely enveloped in flames from a fire burning from within. The doors had been unlatched and the stock had been removed. Moreover, three witnesses testified in reference to the agreement of the defendant to surrender his car to Beavers, whose car was destroyed by fire. The officials testified that

the defendant told them that he removed the animals before setting the fire because he could not bear to burn them.

All these facts and circumstances, we think, were sufficient to satisfy the demands of the law on the question of the *corpus delicti*.

Upon a careful examination of the entire record, we are abundantly satisfied that there is no merit in this appeal, and it follows that the cause must be, and is,—Affirmed.

All the justices concur.