STATE OF IOWA, Appellee, v. D. N. HIATT, Appellant.

No. 45558.

JANUARY 13, 1942.

Walter F. Maley and James E. O'Brien, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Robert E. Frush, County Attorney, for appellee.

HALE, J.—This is an appeal from a conviction under section 5022.02, Code of 1939, providing that, "Whoever, while in an intoxicated condition or under influence of narcotic drugs, operates a motor vehicle upon the public highways of this state, * * * ", providing the penalty, and also providing the penalty for a second offense. The information herein charges that the offense was committed on October 9, 1940, and alleges that this was a second offense. To the charge made in the information a plea of not guilty was entered, and trial had which resulted in the conviction of the defendant.

The defendant had been in the city of Des Moines during the day, and drove west toward Adel, passing through the town of Waukee, which is about 7 miles east of Adel. Preceding him was Miss Anna B. Hunt, who had also been in Des Moines on that day and had taken the bus to Waukee, and from there on drove her car which she had left at Waukee during the day. She drove west on highway No. 6 from Waukee toward Adel. At a point just before reaching a culvert, or, as it is sometimes called, a bridge, her car was struck by the car of the defendant and passed on over the bridge; and when the cars finally came to rest her car was 88 feet west of the west end of the bridge and the defendant's car was 114 feet, 5 inches east of the east end of the bridge, which is 135 feet, 7 inches long, making the total distance the cars were separated 338 feet. Miss Hunt was injured by the impact of the cars. Defendant claims that in the car with him was one Marion Brauer, who was driving the car. When it came to rest the Hunt car was turned somewhat to the south and mostly on the north shoulder of the road. One witness stated that it was completely off the paved part of the highway. Miss Hunt observed Hiatt approaching from the east about the

middle of the bridge. Some conversation was had which will be referred to hereafter, and they then walked back to the east toward the Hiatt car, where the sheriff, Evan Burger, and a newspaper man by the name of Snyder had arrived and were standing. There was some talk between the sheriff and the defendant and the sheriff then towed defendant's car into Adel and conducted the defendant to Dr. Mullmann's office. The defendant at first refused to go, but finally was taken to the office by the sheriff. There followed the preliminary examination, information, and trial and conviction.

It is, of course, necessary before conviction for this offense that it be established, first, that the defendant was driving, and second, that he was intoxicated at the time. Burger, Miss Hunt, Ralph Harden, the deputy sheriff, John Snyder, and Dr. Mullmann all testified that the defendant was at the time intoxicated. Other witnesses who saw the defendant at the Clark filling station about 6 o'clock or a little later testified to the contrary. It is not necessary to further review the testimony as to that point.

As to the question of who was driving the car there is more controversy, and it will be necessary to review to some extent the testimony on that point.

At the close of all the evidence defendant moved for a directed verdict on the ground that the evidence was insufficient to convict, which motion was overruled by the court. There were no exceptions taken to the instructions or any of them. After verdict motions to set aside the verdict and for a new trial were overruled.

There were several witnesses for the State. Miss Hunt, the prosecuting witness, testified that just east of the culvert or bridge her car was struck by a car, and when she got her car stopped Hiatt left his car and came toward her, and she said, "You are the man who struck me?" and he said, "I suppose I am, but you didn't have any tail-light"; but she testified, and was supported by other testimony, that the taillight was actually still burning. They walked back to his car. John Snyder and Evan Burger, the sheriff, were there. She then became ill and was taken into town by Snyder in the sheriff's car. The time

her car was struck was about 6:30 or 6:40 in the evening, and she testified that the defendant at the time was drunk. On cross-examination she said that when she finally stopped her car she pulled up on the shoulder of the road, with the motor still running; she then shut off the power and got out of the car. She then saw Hiatt coming toward her. On redirect examination, after evidence had been introduced by the defendant as to the presence of Brauer, she stated that she saw nobody go by her car, either on the north or the south side of the car, that she saw but one man (Hiatt) coming toward her, and that there was one light from Hiatt's car and her taillight, and that there was only one man. There was no one along the side of the road or anywhere else on the highway. She did not think there was room enough on the shoulder on the north side of her car for anyone to pass, but was not positive as to that. She did not think it was possible that a man could walk by there without her seeing him, but she would not want to swear that nobody went by there. She said she thought she was getting in the ditch before she stopped her car, and the road was on top of a high grade where the car stopped. On cross-examination she stated, in response to inquiry by counsel for defendant, that she was more or less upset by the collision and having been hit, and that she did not look back until after she got out of the car, and then looked toward the east and saw only the one man approaching. When she got out of the car she got out backward and faced to the north, and saw no one. She stated she sat in the car only an instant, just long enough to open the door and get out, after she stopped, and that it could be possible that someone passed the car, although she did not think so.

The first person to arrive at the scene of the collision was Mr. Snyder, who drove from Adel and arrived about five minutes after the accident. This witness stated that he observed both cars, slowed his car somewhat, and walked to the Hiatt car. At that time Burger, the sheriff, approached in his car and parked. At the bridge, coming east, he observed Hiatt and Miss Hunt. He stated that afterward, at the request of the sheriff, he took Miss Hunt to the doctor's office, and returned. While there the first time he had a conversation with Hiatt, and the defendant

said to him, after he had finished talking with Burger, that the latter had asked him how the accident happened and he stated he was driving 50 to 60 miles at the top of the hill and "kicked the car out of gear." Sheriff Burger observed Hiatt and Miss Hunt walking toward the east. When asked in relation to the conversation with Hiatt, the witness stated, "He just said to me, after he had finished talking to Mr. Burger and Mr. Burger had asked him how the accident happened, and he said he was driving 50 to 60 miles at the top of the hill and kicked the car out of gear. I heard him say that, and he muttered something to me, and said, 'It is legal for these cars to have free wheeling.' I think that was the gist of the conversation, but the sense is not connected up to make any thought." The sheriff and Snyder towed the defendant's car back to town and then proceeded to the doctor's office with him.

The defendant as a witness in his own behalf stated that, after leaving Des Moines, where he drank only two bottles of beer during the day, he got out of the automobile at Valley Junction and that Brauer was driving his car when he left that town. He purchased gas four or five miles east of Waukee from a man by the name of Clark, and from there on Brauer drove the automobile. He described the accident, saying that he saw the car four or five car lengths ahead of him, with no taillight that he could notice. He "threw the stick [the shifting lever on the wheel] out of gear." He stated that Brauer was driving the car at that time. The Hunt car was struck just an instant afterward and proceeded on across the bridge. "We pulled off to the side just a little ways and started on ahead to see if anyone was hurt. I went ahead and Brauer rushed into town to get a truck and pull us off the highway." Hiatt and Miss Hunt then proceeded back to his automobile, where Snyder was and Burger came. He talked to all three of them, and to Miss Hunt before the other two came. Snyder came in about five or ten minutes after the collision, and Burger not more than ten minutes later. He related the conversation with Burger as having told him that he was going 45 to 50, not more than 60, miles an hour, and that he made the same statements to Burger that he did in his testimony. They proceeded to Adel. He was willing to drive his

car, but the sheriff said not to drive. The defendant wanted to drive the car himself, but the sheriff would not let him. He then gave his statement of what occurred in the doctor's office, which it is not necessary to repeat. In response to cross-examination the defendant stated that he did not mention the fact that Brauer was driving to anyone at the scene of the accident; that he did not say anything to anybody about anyone driving; that he did not say that he (the defendant) was not driving; that when Brauer started to town he walked "right down the pavement." "Q. Did you walk up the road a ways with him? A. Just as far as Miss Hunt's car. He was walking ahead of me, or he was running instead of walking, and I was walking. Q. And you went across this viaduct? A. Yes, sir. Q. Or this bridge that is spoken of? A. Yes, sir. Q. Were you together then? A. He was ahead of me but we were practically together." Defendant further testified that he did not stop at the car and that he said nothing to anyone at the wreck about Brauer going to town for help. Testifying further on cross-examination he said that he and Brauer got out of the car at practically the same time; they looked at the damage to his car, but did not raise the hood or make any investigation at all as to what the damage was, just looked at the front end at what they could see, and the defendant then sent Brauer into town. After the sheriff came someone raised the hood of defendant's car. In response to a statement made by the sheriff in his testimony the defendant stated that he made no attempt to start the car, but admitted that the sheriff had not permitted him to drive the car into town.

Brauer, who testified that he was employed by Hiatt, stated in his testimony that he drove the car from the Des Moines terminal, and that he observed the car in the highway and tried to stop; that he does not remember Hiatt's throwing the gear shift out but he knew that the car was out of gear when it stopped. The Hiatt car stopped but the other car went on and after it stopped he (Brauer) went into town to get a truck; he "just took a glance at the front end of the car," and does not recall that he opened the hood at that time. He was sent by Hiatt into town. They walked up the road toward the west together, defendant going up to the other car and he (the wit-

ness) went on the north side of the pavement and around on the right side of the other car and someone in the car was facing south. He went to the Chevrolet garage and no one was there, and then he got a truck and started out to the scene of the wreck, but there was no one there and he went on back to Des Moines and got a load of freight. On cross-examination he gave as the reason he did not try to turn out, that if he swung out and the car was hit on the corner he would probably knock it over the bridge, and that there were grades on both sides of the road. He further testified that he was not at the filling station in Adel when the sheriff arrived, but was at the Chevrolet garage. When they got out of the car at the place of the collision he made no effort to see what the damage was, but just tried to push the car off the road; they spent about a minute doing that and then the two (he and the defendant) went up the road together, he going into Adel for a truck, and defendant going up to see who was in the other car. They walked across the bridge together. He went right on into town and did not stop to see if anybody was hurt.

These are the main statements in the testimony as they relate to what occurred at the time of the collision and thereafter, so far as the question of the driver of the car is concerned. Other testimony which we need not set out was in relation to the question of intoxication, and as stated, there was sufficient evidence as to that phase of the case to submit the question to the jury.

There is the testimony of only one other witness having any relation to the question of the person driving. Clark, the proprietor of the filling station east of Waukee, testified that on the night of October 9th, the defendant came to his filling station around 6 o'clock and purchased some gasoline. In response to the question who was driving the car he said, "There was another party driving it. I didn't notice. I don't know." He stated that defendant was not driving the car when it left his place, at 6 o'clock or a little after, and that defendant was at Clark's place two or three times.

It will be seen from the foregoing that the only question so far as the evidence is concerned is as to the driver of the

car, and the case hinges upon that. It seems to us that at the conclusion of the State's testimony there is no question that a prima facie case had been made. The evidence was direct as well as circumstantial, and had the case then been submitted to the jury, a verdict of guilty would have been justified. It would not have been based entirely upon the defendant's statements, though these indicate that he alone was in and was the driver of the car. It would have been based also upon the fact that it would not have been possible for anyone else, under the testimony, to have been driving the Hiatt car. Thereafter, on the introduction of defendant's testimony, it was for the jury to determine as to its value and weight. In considering the defendant's testimony the jury had a right to consider the failure of the defendant to make any statement at the time supporting his theory later at the trial. They could consider also the fact, as shown by the record, that at no time was anyone else visible, either by Miss Hunt, who was in a position to observe, or by anyone else who was there. They could consider also the statement of Brauer that, instead of proceeding directly on the road at the time, where no one was passing, he walked on the outside of the shoulder, which other evidence showed to be narrow and occupied by Miss Hunt's car, and around her car, without either stopping or inquiring as to any damage to such car. Further the jury had a right to consider, in weighing Brauer's testimony and that of the defendant, that, without stopping to examine the damage to the inside of the Hiatt car and with merely a cursory examination of the front thereof, Brauer was immediately dispatched to Adel for a truck and thereafter went into Des Moines on the same evening, and in weighing such testimony they could consider that there was no testimony of anyone who claimed that he saw Brauer, either as he walked or thereafter on the same evening. They would have a right to consider further that he was not seen by Snyder. They had a right to take into consideration any inconsistencies in the evidence, and give such evidence the weight to which it was entitled.

Defendant cites various cases in support of his argument that the evidence here was insufficient to sustain the verdict,

but in no case do we find that the court authorized or directed a verdict under circumstances such as there are here. Several of them refer to the question of intoxication, about which we have no doubt that there was a jury question. No two cases will exhibit exactly the same state of facts, and we have frequently said that in cases of this kind the question of whether or not the evidence is sufficient to support a conviction must depend upon the facts of the particular case. The State argues that in a case of this kind guilt may be shown by circumstantial evidence, citing State v. Lorey, 197 Iowa 552, 197 N. W. 446. There can be no question as to that. See State v. Henricksen, 214 Iowa 1077, 243 N. W. 521, citing State v. Manly, 211 Iowa 1043, 233 N. W. 110. See, also, State v. Kelley, 193 Iowa 62, 186 N. W. 834, and cases cited. In this particular case the State's evidence was sufficient to take the case to the jury, since it excluded the question of any other person being at the wheel of the car.

Defendant cites various cases which are unnecessary to set out, as they refer merely to general rules or to special cases, most of them not involving the question here considered. As we have stated, each case must depend on its own facts. This question, as defendant states in argument, is a vital question in this case.

Defendant states in argument that the court will interfere in criminal cases more readily than in civil cases where the verdict is clearly against the weight of the evidence, a proposition which is not disputed. Defendant states also that the State must rely upon admissions or declarations of the defendant to sustain the conviction. To this we do not agree. There was more than the statement of the witness, as we have indicated in the preceding division.

Defendant at no time excepted to any of the instructions, nor did he submit any. We have, however, carefully read the instructions and find that they fully set out the questions in issue. Notwithstanding there were no exceptions taken, we refer briefly to the objections urged.

Defendant objects to the statement of the issues as assuming the commission of the crime. We do not so read the in-

struction. The portion of the instruction objected to is the statement of the issues, which merely states what the information charged, and the fact that reference was made therein to the charge being a second offense cannot have been prejudicial in any way since the parties had stipulated as to the fact that the defendant was the same person who was convicted of the crime of operating a motor vehicle while intoxicated on the 21st day of December, 1937. Defendant further objects that the jury were told to consider the lack of testimony, when it should have been the lack of evidence. We see no merit in this objection. The distinction is not always preserved in arguments or in writing, and the jury could not have been misled. One instruction complained of was merely as to the weight and credit to be given the testimony of any witness, and is the usual instruction. There was no necessity in that instruction of referring to lack of evidence. The instruction in which the court set out the statute in regard to driving while intoxicated was not prejudicial because the statute includes narcotic drugs. The jury were throughout limited to the evidence on trial and there was no question at the time or at any time as to narcotic drugs. And the same may be said as to the instruction which included beer as an intoxicating liquor. We find no assumption of facts in further instructions, which we think fairly and clearly set out the propositions to be determined by the jury, as in instruction No. 9, which directed them only as to two essential elements—intoxication, and driving while thus intoxicated. Nor could the jury have been misled or prejudiced by the fact that the court told them to consider all the circumstances, including the injuries to Miss Hunt. Surely the jury had a right to consider all that occurred at the time the offense is claimed to have been committed.

We have carefully examined the abstract and all the arguments in this case. The arguments present largely the question of the sufficiency of the evidence. In addition, we have read carefully the entire transcript of the evidence in the case. We find no error and are satisfied that there was presented a jury question. There was no such lack of evidence as would have justified the court in directing a verdict of acquittal. The court

was right in its action in overruling the motions submitted and the cause should be, and it is, affirmed.—Affirmed.

BLISS, C. J., and SAGER, OLIVER, MILLER, GARFIELD, and WENNERSTRUM, JJ., concur.