UNITED STATES of America, Plaintiff,

v.

Bruno T. PEPE, Defendant.

Crim. A. No. 1280.

United States District Court
D. Delaware.

Sept. 28, 1961.

Ralph F. Keil, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

John Biggs III, of Bader & Biggs, Wilmington, Del., for defendant

LAYTON, District Judge.

Defendant has been convicted by a jury of unlawfully failing to pay a special tax imposed on wagering and to register as required by 26 U.S.C.A. §§ 4411 and 4412, respectively.[1] Defendant has moved for a new trial on the technical grounds that there is a variance between the allegations in the information and the court's charge to the jury.

The information alleges that on several different dates defendant, Bruno Pepe,

*"who was then and there engaged in the business of accepting wagers* as defined in Title 26, United States Code, Section 4421, did unlawfully fail to register and pay the special tax required by law to be paid by him in violation of Title 26 United States Code, Sections 4411, 4412 and 7262." (Emphasis supplied.)

Defendant does not deny that he was involved in a numbers game. The evidence leaves no doubt that he was. But the statute imposes a tax on only two figures in a numbers racket: the first is a person who is "engaged in the business of *accepting wagers*." Section 4401(c). He is known informally as a "banker," and in agency terminology would be designated a principal. A banker is the person who deals in the numbers and is the person against whom the player bets. United States v. Calamaro, 1957, 354 U.S. 351, 353, 77 S.Ct. 1138, 1 L.Ed.2d 1394. Bankers must pay a 10% excise tax on the gross amount of wagers received, Section 4401(a); a special tax of $50 per year, Section 4411; and must register and furnish certain information to the official in charge of the Internal Revenue District, Section 4412(a). The second category of persons subject to tax are those who are engaged in *"receiving* wagers for or on behalf of" a banker. See Section 4411. Such persons are known informally as "writers" and are agents of the banker. "Writers" do the

---

1. The statutes relevant to the decision in this case are quoted below:

26 U.S.C.A. "§ 4421. Definitions

"For purposes of this chapter—

"(1) Wager.—The term 'wager' means — * * *

"(C) any wager placed in a lottery conducted for profit.

"(2) Lottery.—The term "lottery" includes the numbers game * * *."

Subchapter A—Tax on Wagers

26 U.S.C.A. "§ 4401. Imposition of tax

"(a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

* * * * *

"(c) Persons liable for tax.—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him * * *."

Subchapter B—Occupational Tax

26 U.S.C.A. "§ 4411. Imposition of tax

"There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."

26 U.S.C.A. "§ 4412. Registration

"(a) Requirement.—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—

"(1) his name and place of residence;

"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and

"(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person."

26 U.S.C.A. "§ 7262. Violation of occupational tax laws relating to wagering—Failure to pay special tax

"Any person who does any act which makes him liable for special tax under subchapter B of chapter 35 without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000."

actual selling of the numbers to the public and record on slips the numbers sold to each player and the amount of his wager. United States v. Calamaro, 1957, 354 U.S. 351, 353, 77 S.Ct. 1138, 1 L.Ed. 2d 1394. The only tax imposed on "writers" is the $50 special tax. See Section 4411. Also, registration requirements for writers are less rigorous than for bankers. See Section 4412(a). Nowhere in the statute is there explicit reference to "bankers" or "writers." The distinction in the statute is made only by saying that the one "accepts" wagers whereas the other is a "receiver" of wagers. Since the information identified Pepe as "engaged in the business of *accepting* wagers", defendant argues he is charged only with failure to pay taxes imposed on a principal—or a "banker." However, at trial, the court charged the jury as follows:

> "If you should find that * * * the defendant was engaged in the business of accepting wagers—that is, *acting as a writer or banker*—and that he failed to register and pay the special tax required by law, then you should return a verdict of guilty." (Emphasis supplied.) (R. 106–107.)

Under this charge the jury might have found Pepe guilty of failure to pay taxes imposed on writers, a crime not included in the information.

The government contends that one who "accepts" wagers may be either a writer or a banker. In support of this argument, the government has cited the case of United States v. Calamaro, 1957, 354 U.S. 351, 355, 77 S.Ct. 1138, 1141, 1 L.Ed.2d 1394 where the court said:

> "In other words, we think that as used in [Section 4411] the term 'receiving' a wager is synonymous with 'accepting' a wager * * *."

The government would have us substitute the word "received" in the information where necessary to extend its coverage to both bankers and writers. On this theory, there would be no variance between the information and the court's charge to the jury.

The government's position, derived as it is from a Supreme Court opinion, would be compelling indeed except that the language quoted from the Calamaro case is dicta, being unnecessary to the decision there reached. The point before the court in Calamaro was the scope of the phrase in Section 4411 which says persons who are engaged in "receiving wagers" are subject to a special tax. It was conceded in Calamaro that a "writer" is a "receiver" of wagers. There was also no question that bankers are covered by other language in Section 4411. The sole issue in Calamaro was the status of a "pick-up man"—i. e., the person who acts as a messenger, carrying numbers slips from the writers to the banker. Calamaro decided that pick-up men are not "receivers" of wagers, and therefore are not subject to the special tax. Thus, for purposes of the Calamaro decision, bankers and writers could well be considered similar in that both are subject to the special tax—as opposed to the pick-up man who is not. The presence or lack of a difference between a banker and a writer, i. e., a difference between an "acceptor" and a "receiver" of wagers was not at issue in Calamaro and any language in the opinion on that point must be regarded as dictum.

Calamaro, when properly analyzed, is not authority for the government's position here.

Moreover, the government's assertion that an "acceptor" is synonymous with a "receiver" of wagers is supported neither by the legislative history of Section 4411 nor by the structure of the statute itself. In both the Senate and House Reports, the following statement appears:

> "A person is considered to be in the business of accepting wagers if he is *engaged as a principal* who, in accepting wagers, does so on his own account. The principals in such transactions are commonly referred to as 'bookmakers' although it is not intended that any technical definition of 'bookmaker', such as the maintenance of a handbook or other device for the recording of wagers,

be required * * *. Persons who receive bets for principals are sometimes known as 'bookmakers' *agents*' or as 'runners.'" (Emphasis supplied.) H.R.Rep. No. 586, 82d Cong. 1st Sess. 56 (1951); Sen.Rep. No. 781, 82d Cong. 1st Sess. 114 (1951), U.S.Code Cong. and Adm. Service, 1951, pp. 1839, 2091.

It is clear from the quoted language that Congress used the words "acceptor of wagers" to designate the principal figure in a wagering operation and "receiver of wagers" to designate an agent. For this reason, the court cannot accept the government's argument which in effect is an assertion that no difference exists between a principal and his agent. That a difference exists here appears on the face of the statute. In addition to the $50 special tax, an "acceptor of wagers" (the principal) must pay a 10% excise tax on the gross amount of wagers received, Section 4401, whereas a "receiver of wagers" (the agent) pays the special tax alone. There is also a difference in registration requirements. *Compare* Section 4412(a) (2) *with* Section 4412 (a) (3).

An additional reason exists for limiting the meaning of "acceptors" of wagers to principals such as "bankers." Criminal statutes are always strictly construed in favor of the accused. United States v. Resnick, 1936, 299 U.S. 207, 209, 57 S.Ct. 126, 81 L.Ed. 127; United States v. Halseth, 1952, 342 U.S. 277, 72 S.Ct. 275, 96 L.Ed. 308. To construe "acceptors" of wagers in the statute to include agents would violate this principle. Congress has used the word "acceptor" of wagers to designate the principal only. The fact that we are dealing with the meaning of an information here makes no difference. Defendant is entitled to assume that the words "acceptor of wagers" where it appears in the information does not have a broader meaning than the same words have in the statute under which he has been charged. The court therefore holds that the information accused Pepe only of being a banker.

Since the court's charge permitted the jury to convict Pepe if it believed him to be a writer, it follows there was a variance between the information and the charge. This variance affected the substantial rights of the accused. It is now well settled in this Circuit that a court cannot permit a defendant to be tried on charges that have not been made in the indictment—no matter how overwhelming the evidence may be against him. Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252; United States v. Raysor, 3 Cir., 1961, 294 F.2d 563; United States v. Lippi, D.Del.1961, 193 F.Supp. 441.

In view of the conclusion of the court, it is unnecessary to discuss other points urged by defendants.

Motion for new trial granted.