STATE OF IOWA, appellee, v. ROBERT TAYLOR JONES, appellant.
No. 52227.

JULY 14, 1966.

Duffield, Pinegar & Tapscott, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett,

Assistant Attorney General, and Ray Fenton, County Attorney, of Des Moines, for appellee.

MOORE, J.—March 17, 1966, defendant, Robert Taylor Jones, was charged by an information filed in Des Moines Municipal Court with the crime of failing to leave his name and address at the scene of a motor-vehicle accident in violation of section 321.264, Code, 1962, to which he entered a plea of not guilty. On trial to the court April 7 he was found guilty and fined $100 or 30 days in jail. From this judgment and sentence defendant appeals.

Defendant's only assigned error is the evidence is insufficient to sustain a conviction. With this contention we agree.

Richard Heathcote testified he parked his white 1965 Buick on East Twenty-third Street just west of his residence at 2301 East Walnut Street in Des Moines about 10 p.m. March 15, 1966; he heard no collision with his car that night; at about 10 the next morning he discovered his left car door and fender had been mashed in, the door handle ruined and the left door window completely broken out and there was no evidence of the name or address of the person who struck his car. He had never talked to defendant.

Richard Tesdell, a Des Moines police officer, testified he was sent to the accident scene about 1:30 p.m. March 16; he observed damage to Heathcote's car along the entire left side; he checked for debris or parts of vehicles and found none but did find light green paint chips on the Buick. He further testified he observed faint tracks in the snow alongside Heathcote's car and opined the car which struck it was traveling south on East Twenty-third probably after making a right turn off Walnut Street. He had never talked to defendant.

Albert Knight, Des Moines Police Department detective, testified he went to the accident scene March 5, 1966, and made a follow-up investigation. When asked if it was not on the 16th he repeated his statement it was on the 5th. The difference in dates is unexplained in the record.

Knight stated he found debris left by the "hit-and-run car"; around 15 to 20 feet south of Heathcote's he found a badly damaged headlight door which he later determined was a standard

type part of 1958 Mercury automobiles; he observed light green paint chips left on the white Buick and on March 16 he talked with defendant.

Knight stated defendant drives a 1958 Mercury registered to Harold and Beverly Jones, defendant's brother and wife, and referred to the Mercury as defendant's car. The record discloses defendant's wife also drives this vehicle.

Knight further testified he observed damage to the left front of this Mercury; some of its light green paint was missing; a small amount of white paint in the area of the front bumper; recently another headlight rim had been installed but he was unable to determine whether the damaged headlight door belonged to this particular Mercury and stated the two vehicle colors were factory colors.

When questioned by Knight defendant stated he had no knowledge of the accident involved or how or when the Mercury became damaged. He further stated he first discovered its damaged condition on Friday or Sunday which he called to his wife's attention and later he replaced the damaged headlight rim.

Taking the State's evidence in its most favorable light we believe this a fair summary of the evidence. Defendant's motion for a directed verdict on the ground of insufficient evidence was overruled. Defendant elected to stand on his motion and offered no evidence. The trial court then found him guilty as charged and pronounced sentence and entered judgment accordingly. The penalty is the maximum under the general penalty clause for violation of any of the provisions of chapter 321 if the penalty is not otherwise specifically fixed. Section 321.482.

Section 321.264, which the information charged defendant violated on March 5, 1966, provides: "Striking unattended vehicle. The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances thereof."

■ It is clear before an accused may be convicted of violation of this section it must appear by substantial evidence he was driving a vehicle which collided with an unattended vehicle. While pointing out the date confusion defendant relies primarily on his contention there is a complete lack of proof he drove the vehicle which damaged Heathcote's parked automobile. The State takes the position that if we find substantial evidence of such driving we should affirm.

The sole question therefore is factual. The legal principles applicable seem well established.

■ We cannot permit a conviction to stand where there is absence of proof of any of the essential elements of the crime charged. State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586; State v. Myers, 253 Iowa 271, 274, 111 N.W.2d 660, 662.

In State v. Burns, 181 Iowa 1098, 1101, 1102, 165 N.W. 346, 348, we say: "All our crimes are statutory. Therefore, one called to answer as for a violation of the statute in a criminal way, is entitled to call upon the State to make proof of all facts essential to constitute the crime charged. Until the proof is forthcoming from the State to establish all the essential elements of the crime charged against the citizen, the presumption of innocence stands between him and conviction. It is fundamental that every man is presumed to be innocent, when placed on trial, until proved to be guilty. To make out his guilt by proof, the proof must affirm the existence of every element essential to constitute the crime. No verdict of a jury can stand in this court where there is absence of proof of any of the elements essential to constitute the crime against which the statute is lodged."

■ Of course a question for the trier of fact may be generated solely by circumstantial evidence. State v. Hiatt, 231 Iowa 499, 507, 1 N.W.2d 664, 668, and citations. But any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. State v. Hooper, 222 Iowa 481, 484, 485, 269 N.W.431, 433, and citations.

In State v. Myers, supra, 253 Iowa 271, 275, 111 N.W.2d 660, 663, we quote this from State v. Vandewater, 176 N.W. 883, 884, not reported in Iowa Reports: "The most that can be said for the testimony of the State is that it creates a suspicion of the guilt of the defendant, and it goes without saying that mere

suspicion is not sufficient. There must be substantive proof of guilt—some fact proven which tends to establish the substantive facts upon which the State relies for conviction. * * * and where facts and circumstances are relied upon to prove guilt, they, when established, must negative every other rational hypothesis except the guilt of the defendant, and must be inconsistent with any rational hypothesis of innocence."

In State v. Saling, 177 Iowa 552, 563, 159 N.W. 255, 259, we say: "* * * a verdict resting on mere suspicion is not well supported."

Both State v. Hooper, supra, 222 Iowa 481, 269 N.W. 431, and State v. Myers, supra, 253 Iowa 271, 111 N.W.2d 660, are factually much like the case at bar. In each we reversed a conviction on the ground the evidence was insufficient to establish more than a suspicion defendant was operating a motor vehicle. In Hooper defendant was seen walking from the direction of a mired Ford car which the State claimed defendant had operated while intoxicated. In Myers defendant was found walking along a road in an injured condition a short distance from his father's car which had struck a bridge. Myers was charged with failing to have his motor vehicle under control. At page 276, 253 Iowa, page 663, 111 N.W.2d, we say: "The State's case fails to do more than generate a suspicion that the defendant drove the car which was found on the wrecked bridge."

The facts in this case are no stronger than those in Hooper and Myers. If the 1958 Mercury did strike Heathcote's Buick either on March 5 or 16 the evidence creates no more than a suspicion defendant was driving the vehicle at that time. A like suspicion may have been created against defendant's wife or perhaps his brother or wife, the registered owners.

Defendant's motion for directed verdict should have been sustained. The evidence is insufficient to support the conviction. —Reversed.

All JUSTICES concur except GARFIELD, C. J., who dissents.

GARFIELD, C. J.—I think there is sufficient evidence to sustain the conviction and would affirm.

"On a claim of insufficient evidence to sustain a conviction,

we view the evidence in the light most favorable to the State. It is the fact-finder's function, not ours, to decide disputed fact questions. The finding of guilt by the trier of fact is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920, 921, and citations." State v. Greer, 259 Iowa 367, 370, 144 N.W.2d 322.

There is ample circumstantial evidence that the 1958 Mercury defendant ordinarily drove struck the unattended Heathcote Buick and severely damaged it. There is undenied direct evidence that the driver of the Mercury did not notify Heathcote or leave his name and address in the Buick as section 321.264 requires. The majority's decision is evidently based on its feeling that the evidence is insufficient to show defendant was driving the Mercury at the time it struck the Buick. I think this overlooks vital testimony on the point.

It is true the Mercury was registered to defendant's brother and the brother's wife. But the question here is whether defendant was driving it at the time it struck the Buick. Officer Knight testified without timely objection and the answer remains in the record: "Q. What kind of vehicle does he [defendant] drive? A. A 1958 Mercury—it's his car. However, it's not registered to him."

Officer Knight also related this conversation with defendant: *"he stated that the first time he noticed it was on Sunday morning* and he had commented to his wife at that time, it looks to me like somebody damaged *our car. Then later on in conversation he stated that as he and his wife were coming out of the Horseshoe Tavern on Friday night * * ** he said to her, 'it looks like *our car* has been damaged,' but he stated he had no knowledge of how it had been damaged and/or at any given time. *I asked him if anyone else drove the car other than himself and he stated that his wife did and I asked him if possibly she may have been driving it on the time of the occurrence and he stated that he didn't feel so. * * *."* (Emphasis added.)

The conflictng stories defendant told Officer Knight as to when he first noticed the damage to the Mercury is also a circumstance tending to show guilt. State v. Tornquist, 254 Iowa

1135, 1145, 120 N.W.2d 483, 489, where we say, "his story [to the police] was not truthful at one point or the other, or both; and, if so, it was an independent circumstance tending to show guilt." To like effect is State v. Ladehoff, 255 Iowa 659, 670, 122 N.W.2d 829, 836.

I think this undenied evidence—defendant offered no testimony—sufficiently dispels the possibility that defendant's brother, the brother's wife or defendant's wife was driving the car at the time it struck the unattended Buick.

The evidence is that defendant lived about one block north of the place the Buick was struck.

I would affirm.