**STATE of Iowa, Appellee,**

v.

**Estle WARREN, Appellant.**

**No. 55853.**

Supreme Court of Iowa.

Nov. 14, 1973.

Rehearing Denied Jan. 10, 1974.

Upton B. Kepford, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., David J. Dutton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

MASON, Justice.

Estle Warren, charged by information with the crime of false pretenses in violation of section 713.1, The Code, 1971, appeals from judgment entered on a jury verdict of guilty.

Defendant organized the Hawkeye Family Security Association in 1965, an Iowa non-profit corporation located in Clear Lake, until it was merged with the Iowa Benevolent Association of Cedar Rapids. The association consisted of various groups of individuals, each group or class distinguished by a type of insurance plan. Defendant solicited and enrolled members for a fee, and upon the death of an enrolled member of a particular group the surviving members of that group were assessed a fee in order to pay a death benefit to any beneficiary designated by the deceased member.

In 1965, defendant, representing himself as Marvin H. Lunbeck, sold Mrs. Clara Hilton of Cedar Falls a membership in one of the association's group plans. In September of 1968 Mrs. Hilton was assessed by defendant for the death of one Harold Hill; believing Hill was a member of her group in the association, Mrs. Hilton mailed defendant a check for the amount of the assessment. Subsequently, similar assessments were paid by Mrs. Hilton for individuals named by defendant as Joe Marchese, Ruth Caldwell and Frank Crappea, always on the belief they were members of the association.

April 28, 1971, defendant was formally accused of falsely representing certain persons as members of the association and assessing surviving members at their death in violation of section 713.1, The Code. In compliance with defendant's request for bill of particulars the State amended the information to specifically charge defendant with defrauding a Mrs. Clara Hilton by falsely assessing her for the death of one Harold Brown Hill and by falsely and fraudulently representing that the said Hill was a member of Hawkeye Family Security Association, which incident the State alleged occurred on September 25, 1968.

Section 713.1, The Code, provides:

"False pretenses. If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned in the penitentiary * * *."

Evidence was introduced at defendant's trial that he received payments from Mrs. Hilton for the death of Hill, Marchese, Caldwell and Crappea. Membership records of defendant's association received in evidence did not list any of these persons as members of any group plans of the association.

Defendant assigns six errors relied on for reversal contending the trial court erred in: (1) overruling defendant's motion to dismiss the charge of false pretenses pending in Black Hawk County against the defendant for the reason the record established the claimed public offense if committed was entirely committed in Cerro Gordo County and that the proper venue for trial is Cerro Gordo County, Iowa;

(2) refusing to order return of certain books and records taken from defendant without legal process and arbitrarily withheld from him by the State thus preventing adequate preparation of his defense; (3) overruling defendant's motion for mistrial based on comment by the county attorney that defendant's wife had not taken the witness stand; (4) overruling defendant's motion at the close of the State's case in chief to dismiss and remove certain testimony from consideration of the jury; and (5) admitting certain testimony as to claimed related offenses which was not only prejudicial but irrelevant and immaterial and could in no way or manner be related as required by law. In his final assignment defendant contends he failed to receive a fair trial.

I. Defendant contends the State failed to prove any element of the crime of false pretenses was committed within Black Hawk County where the information was filed against him. He argues venue was in Cerro Gordo County exclusively, inasmuch as the assessment notice was prepared in and mailed from Cerro Gordo County and the check was received and cashed by defendant in that county.

This statement from State v. Hackett, 197 N.W.2d 569, 570 (Iowa 1972) is apposite:

"Venue is a jurisdictional fact put in issue by a plea of not guilty which the State must prove beyond a reasonable doubt as a vital ingredient of any prosecution. In order to secure a conviction in a criminal prosecution it is necessary to show not only that the act denounced as a crime has been committed but that it has been committed within the territorial jurisdiction of the court in which the criminal charge is filed. * * * [citing authority]."

The State asserts defendant's motion to dismiss for improper venue was untimely and an element of the offense—the false pretense—did in fact occur in Black Hawk County, and therefore the motion was correctly overruled.

Defendant moved to dismiss the case on the ground venue could not be proven after the testimony of Mrs. Hilton and Mr. Beck, the State's first two witnesses. The State believes the motion came too late; that the matter of venue should have been raised before trial. As of July 1, 1973, a defendant must object to the place of trial prior to trial or waive his objection. Section 753.2, The Code, 1973 (effective July 1, 1973). The State urges this enactment merely reflects the common law. It refers this court to its recent holding that a defendant must move for a change of venue when the grounds therefor first become apparent, and not in a motion for new trial. State v. Curtis, 192 N.W.2d 758, 759 (Iowa 1972). Although the statutory right to have a criminal case tried in a particular county may be waived, Lamb v. Davis, 244 Iowa 231, 236, 56 N.W.2d 481, 483, the Iowa court, insofar as has been brought to our attention, has not required a defendant to challenge venue by pretrial motion prior to this enactment.

Defendant here moved to dismiss for improper venue immediately after the testimony of the State's witnesses established the unlawful events constituting the offense charged. It would seem the motion was sufficiently prompt to apprise the trial court of the problem to enable it to take corrective action, if necessary.

We turn to the merits of this assignment. In this connection it is deemed advisable to call attention to the fact that section 713.1 consists of two distinct parts, the first relates to the obtaining of money or other property from another person by false pretenses with an intent to defraud. The other portion of the statute concerns a separate offense, the obtaining of the signature of any person to any written instrument the false making of which would be punished as forgery. State v. Pullen, 252 Iowa 1324, 110 N.W.2d 328 and the Iowa decisions relied on in that opinion involve the crime defined in the second part of the statute.

■ The information here charged commission of the offense specified in the first portion. The material allegations of a charge of such offense are: (1) the intent to defraud some particular person or people generally; (2) the false pretenses or representations regarding a past or existing material fact; (3) knowledge of the accused of the falsity of his representations at the time he made them; (4) the accomplishment of the intended fraud by employment of such false pretenses; and (5) reliance by the victim upon the false representations in parting with money or other property.

To sustain venue in Black Hawk County it was incumbent upon the State to prove by competent evidence beyond a reasonable doubt that at least one of the foregoing acts necessary to constitute the crime of obtaining money or other property by false pretenses was committed by defendant in that county.

At the time material here section 753.4, The Code, 1971, provided:

"Offenses partly in county. When a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county, except as otherwise provided by law."

■ The record discloses Warren caused a notice of assessment to be forwarded by mail to Mrs. Hilton representing to her Harold Hill was a member of one of the association's group plans and had died. As a surviving member of that group she was assessed a definite amount in order to pay a death benefit to a designated beneficiary. The assessment notice was received by Mrs. Hilton in Cedar Falls, Black Hawk County.

The evidence would justify a finding the representation made by Warren as to Hill's membership in a group plan of the association was false; such representation was calculated and adapted by Warren to mislead and deceive Mrs. Hilton into parting with the amount of money called for by the assessment. There is substantial evidence that Mrs. Hilton, while in Black Hawk County, relied on the false representation and did part with her money.

The trial court did not err in refusing to sustain defendant's motion for change of venue.

II. As his second assignment of error defendant claims he was denied his right to a fair trial under the United States Constitution because the court refused to direct the State to return the association's records in order that defendant could prepare his defense. Before trial some of the records were obtained pursuant to a lawful search warrant, the remainder of the records held by the State was acquired by the State Bureau of Criminal Investigation after they were voluntarily turned over to the State Insurance Department by Mr. Bjornson who had purchased defendant's association.

In its ruling on defendant's initial motion for the return of the records, the court authorized the State to retain possession and control of them, but permitted defendant to examine and copy them. Thereafter, defendant again sought possession of the original records. The court overruled this second, amended motion for return of the records but required the State to provide defendant with whatever copies he requested.

Section 751.36, The Code, is dispositive of defendant's claim so far as it relates to those records obtained under the search warrant:

"Seizure of other property—disposition. When any officer in the execution of a search warrant shall find any stolen or embezzled property, or shall seize any other things for which a search warrant is allowed by this chapter, all the property and things so seized shall be safely kept, by the direction of the court or magistrate, so

long as shall be necessary for the purpose of being produced as evidence on any trial; * * *."

■ Defendant was not entitled in light of this statute to the return before trial of legally seized evidence. See Ellis v. United States, 321 F.2d 931, 933 (9 Cir. 1963); United States v. Luros, 243 F.Supp. 160, 171 (N.D.Iowa 1965), cert. den., Luros v. Hanson, 382 U.S. 956, 86 S.Ct. 433, 15 L. Ed.2d 361.

■ Further, the court properly denied defendant possession of other records voluntarily given the State by the purchaser of defendant's association. The following language appears in 79 C.J.S. Searches and Seizures § 112, pp. 925–926:

"Where the property was not illegally seized, as where it was taken under a search warrant issued on probable cause, or was taken as an incident to a lawful arrest, or was voluntarily surrendered, such property need not be returned before it is used in the criminal prosecution * * *."

Essentially, defendant asked for the return of lawfully obtained evidence that was to be used against him in the pending trial. No authority is cited to sustain such a request.

■ Nearly four months prior to trial, the State was ordered to produce the records for inspection, analysis and copying. Defendant was thus assured an opportunity to prepare his defense and a fair trial. See State v. Eads, 166 N.W.2d 766 (Iowa 1969).

The assignment is without merit.

III. Defendant next contends the trial court committed reversible error in failing to sustain his motion for mistrial grounded on the prosecutor's reference during his closing argument to the fact defendant's wife never testified on his behalf.

The State does not contest the timeliness of defendant's motion. It seeks to avoid reversal on the basis of the following admonition given the jury:

"THE COURT: Ladies and gentlemen of the jury, reference was made in argument here to the fact that a woman who is the wife of the defendant, according to his testimony, did not take the witness stand. I would ask you to disregard that line of argument and put it out of your mind in arriving at your verdict and not consider it in your deliberations because the law applicable to this burden of proof is upon the State to establish guilt of a defendant beyond a reasonable doubt. Mr. Warren in this trial is under no duty to establish his innocence, but in a criminal case where the government brings a charge, the burden of proof is upon the State, so I would ask you to put that out of your mind in arriving at your verdict. You can proceed now with the argument."

Examination of the trial transcript discloses the following record was made during the course of the final arguments to the jury.

"THE COURT: Let the record show that the jury is now retired and the defendant and counsel and the county attorney are present in the courtroom.

"MR. KEPFORD: If the Court please, in his argument to the jury Mr. Dutton, the county attorney, was commenting on the fact that a woman sometimes known by the name of Pat Lennan, who was the wife of this defendant, had not been called to testify and I object to it on the grounds that it is prejudicial error and at this time *I move for a mistrial on that ground alone,* but even if the mistrial is not granted, I don't think it should be participated in any further." (Emphasis supplied)

Following some colloquy between court and counsel the court commented:

"THE COURT: Well, I am not as sure as either one of you, but I think it does at least come close to the same type of thing as commenting on the failure of the defendant himself to take the stand, so I sug-

gest we go to some other line of argument and I will instruct the jury simply that this portion of the argument is not to be considered by them in arriving at their verdict, that the burden is on the State to establish the guilt of the defendant and he is not required to prove his innocence."

The jury was then recalled and the court gave the admonition set out above.

That the prosecutor's comments were prejudicial has been previously settled by this court. In State v. Levy, 160 N.W.2d 460, 467 (Iowa 1968), we said: "Inherent in section 622.7, Code, 1966 * * * is the unavoidable proviso that no inference of guilt shall arise from failure of one spouse to testify for or against the other. From this it necessarily follows the full protection of the statute is not obtained if silence of a wife is permitted to be construed against the husband."

Just before making the statement quoted above the court in *Levy*, 160 N.W.2d at 467, noted:

"We are not here confronted with a challenge as to fair trial under the federal constitutional due process mandate and the rule stated in Chapman v. State of California, 386 U.S. 18, 20–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705. * * * [citing authorities].

"This means the issue as to prejudical error in trial must here be resolved under common law. Dealing with that subject we have repeatedly held, misconduct on the part of counsel for the State will generally be regarded as harmless unless it results in depriving accused of a fair trial or in a miscarriage of justice. * * * [citing authorities]."

It appears obvious from a reading of the portion of the record set out that the trial court was aware of the constitutional question presented. However, Warren does not urge his federally guaranteed rights under the Fifth Amendment to the United States Constitution were violated. Rather, he elects to rely on State v. Levy which he cites in arguing the county attorney's remark to the jury was improper comment on the exercise of the husband-wife privilege and entitled him to a mistrial.

■ Thus, the issue is whether the misconduct of the prosecutor in argument is sufficient as to amount to a denial of a fair trial under the common law. The trial court has considerable discretion in passing upon this question and ordinarily the court's admonition to the jury that it disregard the prejudicial comments cures any error. However, this discretion is not unlimited. State v. Wright, 203 N.W.2d 247, 251 (Iowa 1972); State v. Vickroy, 205 N.W.2d 748, 751 (Iowa 1973); and authorities cited in these opinions.

■ In the present case the prosecutor's prejudicial comment was made only once. The jury was immediately instructed to not consider the failure of defendant's wife to testify. This is not the case where the prosecutor repeatedly endeavored by insinuations, inferences, and innuendoes, both in presentation of evidence and in arguments, to indelibly impress upon the minds of the jurors that the defendant was designedly suppressing his wife's testimony by exercising his privilege as to communications between husband and wife, and that such testimony, if given, would be damaging to the defendant as in *Levy*.

The trial court necessarily found defendant was accorded a fair trial notwithstanding his claim of misconduct of the prosecutor in argument. After giving such finding the weight it deserves this court is not justified in holding it clearly appears the finding was a manifest abuse of discretion. State v. Hephner, 161 N.W.2d 714, 721 (Iowa 1968).

The trial court did not abuse its discretion in overruling defendant's motion for mistrial. See Annot., 32 A.L.R.3d 906, 915.

IV. Defendant assigns as error the court's failure to sustain his motion for directed verdict and motion to remove testimony from the consideration of the jury.

both of which were made at the close of the State's evidence.

No authority is cited for his contentions and no argument is advanced under this division in defendant's brief.

■ Of course, a defendant cannot appeal from the court's failure to sustain his motion for directed verdict made at the close of the State's case. State v. Smith, 195 N.W.2d 673, 675 (Iowa 1972); State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972); State v. Tokatlian, 203 N.W.2d 116, 119 (Iowa 1972).

■ Defendant sought to have the testimony of every State's witness stricken from the record, as well as its exhibits, after the State rested, claiming such evidence was the product of an unlawful search and seizure in violation of defendant's constitutional rights. A pretrial motion to suppress the testimony of Mrs. Hilton, Mrs. Sagert, Mr. Beek and Mr. Read, and exhibits "A" and "B", was made, also alleging violations of the Fourth Amendment protection against an unlawful search and seizure.

Defendant does not reveal how the search warrant under which some of the records were obtained was deficient, nor does the record. Also, he does not appeal from the court's ruling on his motion to suppress. Since defendant's contentions in divisions I, II and III are without merit, they cannot, as he urges, support this assigned error.

■ V. The State presented evidence that defendant issued checks to a Dennis Carter and Robert Read for the amount of the respective death benefits obtained by assessment for the deaths of Hill, Marchese and Caldwell. The State contends these persons, as well as Frank Crappea, were not members of the association. After cashing the checks, Carter and Read testified they returned the money to defendant.

On cross-examination of defendant the State introduced in evidence a series of checks issued in payment of death benefits to the beneficiaries of various members during the years 1969 and 1970. The amount of the checks varied from $500 to approximately $550 with the exception of checks written to Carter and Read. A check was written to Carter for the death of Marchese in the amount of $706 and one for the death of Hill in the amount of $696. Read was issued a check on the death of Caldwell for $720 in addition to one for the death of Cain for $709.

The trial court overruled defendant's objection to these checks, concluding the checks had "some probative value with the State's contention that * * * [the Hill, Crappea, Marchese and Caldwell] transactions were not ordinary transactions."

The court further ruled: "I think anything out of the defendant's books and records that tends to show that the transactions in respect to those people were treated in any way differently than what we will call the ordinary transaction is of some probative value in determining whether or not in fact those people were members. I will let it in."

It should be pointed out that defendant concedes Frank Crappea was never a member of the association. However, an assessment letter was sent out under Crappea's name and defendant received in the neighborhood of $650 to $660 as a result of that assessment letter. No benefits were paid to anyone for Crappea's death.

Defendant now asserts the court abused its discretion in admitting the evidence of the transactions in 1969 and 1970 charging these payments were wholly irrelevant to the assessments against Mrs. Hilton for the deaths of Hill, Crappea, Marchese and Caldwell, particularly as related offense. Citing State v. Wesson, 260 Iowa 331, 334, 149 N.W.2d 190, 192–193, defendant argues this evidence leads "to a mere suspicion of the existence of facts sought to be proven."

The State, however, did not offer the proof of other payments of death benefits in 1969 and 1970 as evidence of other like or similar false pretenses offenses ordinarily admissible to establish: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme and (5) identity. See State v. Hopkins, 192 N.W.2d 747, 748 (Iowa 1972).

Rather, relevancy is predicated upon the theory the disparity in the amount of checks written to Read and Carter on the one hand and the amount of those checks written to others for deaths of presumably legitimate members tends to establish Harold Hill, Joe Marchese and Ruth Caldwell were not members of the association and defendant's conduct in causing assessment letters for their deaths to be sent out is admissible as bearing on the question of defendant's knowledge these persons were not association members.

The trial court turned admissibility of the challenged evidence on the basic principle of relevancy. See State v. Wright, 191 N.W.2d 638, 640 (Iowa 1971).

In State v. Hopkins, 192 N.W.2d at 752, this court referred to the following statement in McCormick on Evidence, section 152: "The most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than·it would be without the evidence?*" (Emphasis in the original). This principle appears in section 185 of the second edition of that author's treatise on evidence.

It will be recalled defendant was charged in the information as amended with falsely and fraudulently representing to Mrs. Hilton that Hill was a member of one of the association's group plans at the time of his death. In addition to establishing Mrs. Hilton's reliance on this representation in parting with her money in payment of the assessment, the State had the burden to prove beyond a reasonable doubt Warren's knowledge the pretenses and representations employed by him that Hill was a member of the association was false at the time.

As bearing on this question, the fact the amount of the death benefits Warren caused to be paid to Carter as the beneficiary of Hill's death exceeded by approximately $200 the amount paid beneficiaries of supposedly legitimate members of the association would have probative value. Evidence that checks issued to Carter and Read as benefits for the deaths of Marchese and Caldwell also exceeded by approximately $200 the amounts generally paid as benefits for the death of legitimate members would be relevant under the test of relevancy offered by Professor McCormick. In other words, the evidence of these checks would render the desired inference Warren knew of the falsity of his representations more probable than it would have been without the evidence.

"Having probative value or relevancy on the issue stated, the evidence was admissible to be weighed by the jury along with other evidence in determining one fact from the existence of another in their process of reaching their verdict. See 1 Wigmore on Evidence, Third Ed., section 12." State v. Hopkins, 192 N.W.2d at 752.

The trial court was correct in its ruling on the admissibility of the evidence offered.

VI. Finally, defendant urges he was denied a fair trial for the several reasons related in divisions I through V. Having resolved those contentions against defendant, they cannot serve as the basis for this claimed error.

The case is therefore

Affirmed.