**STATE of Iowa, Plaintiff-Appellee,**

v.

**James Eugene HARRISON,
Defendant-Appellant.**

**No. 66935.**

Court of Appeals of Iowa.

Aug. 26, 1982.

C.A. Frerichs of Fulton, Frerichs, Martin & Andres, Waterloo, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Roxann M. Ryan, Asst. Atty. Gen., for plaintiff-appellee.

OXBERGER, Chief Justice.

Defendant was convicted of the crime of bookmaking in violation of section 725.7, The Code 1979. Defendant appeals claiming as a matter of law that the State: 1. Failed to prove proper venue for the crime of bookmaking; and 2. Failed to prove an essential element of the crime of bookmaking. We reverse.

Between December 11 and December 17, 1980, defendant was placed under surveillance by officers of the Waterloo Police Department. He was observed making a number of stops at business establishments, a country club, and an Elks lodge. He made some of the stops on more than one occasion, and some of them were very brief.

On December 17, 1980, pursuant to a search warrant, defendant, his automobile, and his home were searched. Certain papers and $6516.23 in cash were seized.

In the opinion of the officer who seized these papers, one of them constituted a line sheet—that is, a list of football games together with a point spread on the games. Others were alleged to be betting slips, and still others were alleged to be account sheets or records of payments paid or received or to be made or received on bets.

No officer ever witnessed the defendant taking or receiving any bets while he was under police surveillance. In the opinion of the officer who had him under surveillance, none of the papers seized from the defendant would have anything to do with the taking, receiving, or placing of any bet or bets on December 17, 1980, the day he was charged with the crime of bookmaking. The line sheets seized from the defendant can be purchased legally and commercially at the cigar store where defendant had stopped on both days that he was under surveillance. The State's principal witness

had no knowledge or opinion as to what dates or particular events the alleged betting slips had reference, was unable to make any connection between the line sheets and the alleged betting slips, was unable to determine whether the alleged betting slips had anything to do with the forthcoming football games listed on the line sheets, and was unable to testify as to when or where defendant had made any bets if, indeed, he had done so.

I. Sufficiency of the Evidence.

Section 725.7 of the Iowa Code provides that "[a]ny person who ... makes any bet or wager for money or other property of value, or who engages in bookmaking commits a serious misdemeanor."

"Bookmaking" is defined as:

... the taking or receiving of any bet or wager upon the result of any trial or contest of skill, speed, power or endurance of man, beast, fowl or motor vehicle, which is not a wager or bet pursuant to section 99B.12, subsection 2, paragraph "c", or which is laid off, placed, given, received or taken, by an individual who was not present when the wager or bet was undertaken, or by any publicly or privately owned enterprise where such wagers or bets may be undertaken.

Section 99B.1(17), The Code 1979.

Iowa Code § 725.10 provides:

Any person who records or registers bets or wagers... upon the result of any trial or contest of skill, speed, or power of endurance or man or beast, or upon the result of any political nomination or election, ... shall be guilty of a serious misdemeanor.

This case turns upon our construction of § 725.7. The statute is a criminal one imposing punishment by fine or imprisonment and is therefore to be strictly construed. *State ex rel. Turner v. Drake,* 242 N.W.2d 707, 709 (Iowa 1976) *citing* Sutherland, Statutory Construction, § 59.08 (4th Ed., Sands 1974); *State v. Kool,* 212 N.W.2d 518, 520 (Iowa 1973); *State v. Nelson,* 178 N.W.2d 434, 437 (Iowa 1970).

In construing the statute, both the language used and the purpose for which

the legislation was enacted must be examined. In seeking the meaning of a law, the entire act must be considered and each section construed with the act as a whole and all parts thereof construed together. The subject matter, reason, consequence, and spirit of an enactment must be considered, as well as the words used. In addition, the statute should be accorded a sensible, practical, workable, and logical construction.

■ If there is more than one statute pertaining to the same subject, each must be considered and the concept of *pari materia*, that statutes dealing with the same subject matter must be reconciled with one another, comes into play. *Matter of Estate of Bliven*, 236 N.W.2d 366, 369 (1975), *citing State v. Bartz*, 224 N.W.2d 632, 635 (Iowa 1974); *Goergen v. State Tax Commission*, 165 N.W.2d 782, 785–86 (Iowa 1969); 2A Sutherland, Statutory Construction, §§ 51.02–51.03 (Sands 4th Ed. 1973).

■ Furthermore, all relevant legislative enactments must be harmonized, each with the other, so as to give meaning of all, if possible. We must determine the legislative objective and in so doing proceed upon the premise that the General Assembly intended each of its enactments to be accorded a practical application leading to a reasonable result which will accomplish its purpose. *Matter of Estate of Bliven, supra*, at 369. *See also Doe v. Ray*, 251 N.W.2d 496, 500–01 (Iowa 1977).

■ Effect must be given, if possible, to every word, clause, and sentence of a statute. It should be construed so that effect is given to all its provisions and no part will be inoperative or superfluous, void, or insignificant. *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970).

With these principles in mind, we must assume that the General Assembly, when it enacted both sections 725.7 and 725.10, intended to proscribe two different kinds of behavior. The one, proscribed by section 725.7, would be making a bet or wager or engaging in bookmaking, that is, taking or receiving a bet or wager. The other, covered by section 725.10, would constitute a separate and distinct offense consisting of registering bets or wagers.

In *United States v. Calamaro*, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394, the United States Supreme Court observed that:

"In normal usage of familiar language, 'receiving' wagers is what someone on the 'banking' side of gambling does in dealing with a bettor. Placing and receiving a wager are opposite sides of a single coin. You can't have one without the other . . . ."

The Court went on to note that there is a very real difference between a wager and a record of a wagering transaction. It is the banking record and not the wager which the pick-up man receives from the writer and transmits to the bank. The pick-up man no more receives wagers than a messenger, who carries records of customer transactions from a branch bank to a central office, receives deposits. *Calamaro, supra*, 354 U.S. at 354–55, 77 S.Ct. at 1141, 1 L.Ed.2d at 1397.

That is, there is a significant distinction to be drawn between receiving or taking a wager, which is the making of a gambling contract, and the transportation of a piece of paper. *See also United States v. Pepe*, 198 F.Supp. 226, 228 (D.Del.1961); *United States v. Cooperstein*, 221 F.Supp. 522, 525 (D.Mass.1963); *Griffin v. United States*, 588 F.2d 521, 527 (5th Cir.1979).

"Bookmaking" is statutorily defined as "the taking or receiving" of a bet or wager. Taking or receiving a wager is not the same as recording or registering a bet or wager. In this case, the evidence seems to suggest that defendant may have been recording or registering bets or wagers. It suggests also that he may have been carrying such records upon his person when he was apprehended. But he was not convicted of a violation of § 725.10. For his conviction under § 725.7 to stand, the State must prove each essential element of the crime charged beyond a reasonable doubt. *State v. Jones*, 259 Iowa 375, 378, 144 N.W.2d 120, 122 (1966); *State v. Hill*, 258 Iowa 932, 935, 140 N.W.2d 731, 733 (1966); *State v. Myers*, 253 Iowa 271, 274, 111 N.W.2d 660, 662 (1961). *See also State v. Burns*, 181 Iowa 1098, 1101–02, 165 N.W. 346, 348 (1917):

All our crimes are statutory. Therefore, one called to answer as for a violation of the statute in a criminal way is entitled to call upon the State to make proof of all facts essential to constitute the crime charged. Until the proof is forthcoming from the State to establish all the essential elements of the crime charged against the citizen, the presumption of innocence stands between him and conviction. It is fundamental that every man is presumed to be innocent when placed on trial, until proved to be guilty. To make out his guilt by proof, the proof must affirm the existence of every element essential to constitute the crime. No verdict of a jury can stand in this court where there is absence of proof of any of the elements essential to constitute the crime against which the statute is lodged.

██ ██ Under our construction of § 725.7, the recording or registering of bets or wagers is not sufficient to establish the crime of bookmaking. An essential element of bookmaking is the taking or receiving of an illegal bet or wager. The State concedes that it produced no evidence of the initial placement of a bet by a bettor-victim, but insists that it did produce substantial evidence of the defendant's guilt. It is ·a matter of elementary logic that if there is no evidence of the placement of a bet by a bettor-victim, then there is no evidence of the defendant's having taken or received a bet.

We conclude, therefore, that the State has failed to prove an essential element of the crime of bookmaking in this case, and that the conviction cannot stand. It is thus unnecessary for us to discuss the question of venue raised on appeal.

REVERSED.

All judges concur except DONIELSON, who dissents.

DONIELSON, Judge (dissenting).

I dissent.

I believe there is substantial evidence in the record to support the verdict finding the defendant guilty under Iowa Code § 725.7 (1979). The majority's emphasis on distinguishing Iowa Code § 725.10 (1979), which makes it an offense to record or register a bet or wager is unwarranted. The defendant was not charged under that section and there has been no finding that the defendant actually recorded or registered any bets or wagers. It is not the job of this court to intimate that the defendant is guilty of a different crime than that with which he is charged. Our only duty is to determine whether there was substantial evidence to support the verdict. In so doing, we are to view the evidence in the light most favorable to the judgment and uphold the verdict if it is supported by substantial evidence. *State v. Robinson,* 288 N.W.2d 337, 338–40 (Iowa 1980). Evidence is substantial if a rational trier of fact could be convinced that the defendant is guilty beyond a reasonable doubt. *Id.,* at 339.

In its opinion, the majority appears to conclude that the defendant was recording or registering bets or wagers and that this is insufficient to establish the crime of bookmaking. As pointed out, this line of analysis is inappropriate since there has been no conclusion that defendant was engaged in such activities. Moreover, the majority misreads the state's argument to mean that they produced absolutely no evidence of the placement of a bet. Throughout their brief, the state concedes that they have no *direct* proof of this fact, but asserts there was sufficient *circumstantial* proof of defendant's guilt to uphold the verdict. Nowhere is it suggested that there is no circumstantial evidence that defendant was engaged in bookmaking which is defined, in part, as the taking or receiving of illegal bets or wagers. On the contrary, the facts showed defendant made consecutive weekly visits to the same places, that he was in possession of various bookmaking paraphernalia and a large amount of cash, and that the account balance sheet demonstrated that if payouts were deducted from the receipts, the remaining sum would approximate that found in his possession. This is circumstantial evidence which is just as probative as direct evidence. Iowa R.App.P. 14(f)(16). Since I believe the circumstantial evidence in this case is substantial, I would

affirm the trial court's findings on this issue.